UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RIDEAPP, INC.,<br><br>        Plaintiff,<br><br>   - against -<br><br>JUNO USA, LP,<br><br>        Defendant. | ECF CASE<br><br>No. 1:18-cv-11579-KMW |

**JUNO USA, LP'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE**

              P. Anthony Sammi
              Douglas R. Nemec
              Andrew D. Gish
              SKADDEN, ARPS, SLATE,
               MEAGHER & FLOM LLP
              Four Times Square
              New York, New York 10036
              Phone: (212) 735-3000
              anthony.sammi@skadden.com
              douglas.nemec@skadden.com
              andrew.gish@skadden.com

              *Attorneys for Defendant Juno USA, LP*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

A.   Claim Construction Is Not Necessary Here ...................................................................1

B.   *Alice* Step 1 ....................................................................................................................3

      1.   RideApp Mischaracterizes Juno's Position ...........................................................3

      2.   RideApp Fails To Identify Non-Abstract Structure in the Claims .........................4

      3.   Humans Can Perform the Claimed Abstract Idea of Vehicle Dispatch ..................6

C.   *Alice* Step 2 ....................................................................................................................7

      1.   RideApp Inappropriately Considers Whether the Abstract Idea, Rather Than the Additional Elements, Supplies an Inventive Concept .............................7

      2.   The Technological Elements Beyond the Abstract Idea Are Conventional ...........8

      3.   RideApp's Pleadings Cannot Generate a Factual Dispute ......................................9

D.   The Risk of Broad Preemption Confirms Patent Ineligibility .........................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   890 F.3d 1354 (Fed. Cir. 2018) ................................................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
   573 U.S. 208 (2014) ..........................................................................................................3, 5, 7

*Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) ................................................................................................6

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018), *petition for cert. docketed*, No. 18-415 (U.S. Oct.
   3, 2018) .....................................................................................................................................9

*British Telecommunications plc v. IAC/InterActiveCorp*,
   No. 18-366-WCB, 2019 WL 438335 (D. Del. Feb. 4, 2019), *appeal docketed*, No.
   19-917 (Fed. Cir. May 24, 2019) ............................................................................................10

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ........................................................................................7, 8, 9

*Cleveland Clinic Foundation v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018) .................................2

*Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ................................................................................................6

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) ...........................................................................................2

*DietGoal Innovations LLC v. Bravo Media LLC*,
   33 F. Supp. 3d 271 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015) ..............1, 2

*Esoterix Genetic Laboratories LLC v. Qiagen Inc.*,
   133 F. Supp. 3d 349 (D. Mass. 2015) .......................................................................................3

*Intellectual Ventures I LLC v. Capital One Bank (USA), National Ass'n*,
   792 F.3d 1363 (Fed. Cir. 2015) ................................................................................................9

*Kickstarter, Inc. v. Fan Funded, LLC*,
   No. 11 Civ. 6909 (KPF), 2015 WL 3947178 (S.D.N.Y. June 29, 2015), *aff'd*, 654
   F. App'x 481 (Fed. Cir. 2016) ............................................................................................6, 10

*McRO, Inc. v. Bandai Namco Games America Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ............................................................................................6

*Multimedia Plus, Inc. v. PlayerLync, LLC*,
    198 F. Supp. 3d 264 (S.D.N.Y. 2016) , *aff'd*, 695 F. App'x 577 (Fed. Cir. 2017) ...............2

*Personal Beasties Group LLC v. Nike, Inc.*,
    341 F. Supp. 3d 382 (S.D.N.Y. 2018), *appeal docketed*, No. 19-1235 (Fed. Cir.
    Nov. 27, 2018) .....................................................................................................................6

*Quantum Stream Inc. v. Charter Communications, Inc.*,
    309 F. Supp. 3d 171 (S.D.N.Y. 2018)  *appeal dismissed*, No. 18-1769 (Fed. Cir.
    Aug. 7, 2018) ......................................................................................................................4

*Stanacard v. Rubard, LLC*,
    No. 12 Civ. 5176 (CM) (MHD), 2015 WL 7351995 (S.D.N.Y. Nov. 18, 2015) ................7

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ..........................................................................................10

*WalkMe Ltd. v. Pendo.io, Inc.*,
    No. 18 cv 7654 (DLC), 2019 WL 1512602 (S.D.N.Y. Apr. 4, 2019) .................................5

**RULES**

N.D. Cal. Patent Local R. 3-1, 3-3, 4-1(a), 4-2(a) ........................................................................3

**OTHER AUTHORITIES**

*RideApp, Inc. v. Lyft, Inc.*,
    No. 3:18-cv-07152-JST  (N.D. Cal. Mar. 20, 2019), Dkt. No. 73 .......................................3

Straightforward application of the two-step *Alice* test demonstrates that (1) viewed as a whole and stripped of technical jargon, the elements of the asserted claims recite the abstract concept of vehicle dispatch; and (2) the '730 patent admits that the remaining technological claim limitations, considered individually or in combination, are purely conventional. Unable to contest this directly, RideApp's Opposition obfuscates at every turn. At the outset, RideApp argues that the Court could not possibly rule on Juno's motion prior to claim construction, but neglects to explain how construction could alter the analysis. At Step 1, RideApp insists that the claims cannot be directed to an abstract concept because there is structure disclosed in the specification, but specifies no such structure. At Step 2, RideApp asserts that its allegation that digital ridesharing is novel creates a factual dispute, but it fails to explain that only factual disputes regarding the distinct *technological claim elements*—of which there are none—are pertinent. And throughout—such as when proclaiming that unclaimed features like preventing "criminal activity" render the claims non-abstract—RideApp ignores the only thing that actually matters: the claim language. Whether or not the inventor was clever, and even if riders on a rainy night appreciate ridesharing services, the '730 patent is nevertheless invalid because all *the claims* recite is implementing the abstract idea of vehicle dispatch using conventional devices.

A.    <u>**Claim Construction Is Not Necessary Here**</u>

Emblematic of its conclusory positions, RideApp contends that "there are complex and disputed issues of claim construction that must be decided before patent eligibility," but fails to recite a single example of a term requiring construction, let alone explain how construction might impact the § 101 analysis. (Dkt. No. 52 at 9-10.) If this tactic were permissible, no § 101 motion to dismiss could ever be granted. In fact, where claims recite "only broad subject matter categories . . . claim construction is not necessary" to rule on a § 101 motion to dismiss. *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 289 (S.D.N.Y. 2014)

(citation omitted), *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015); *Multimedia Plus, Inc. v. PlayerLync, LLC*, 198 F. Supp. 3d 264, 267 (S.D.N.Y. 2016) ("[C]ourts have routinely invalidated claims without the benefit of claim construction . . . ." (citation omitted)). As the below table demonstrates, the claims here recite broad techniques at the highest level of generality, such as tracking passengers and vehicles, allocating passengers to vehicles, and transmitting the necessary information to passengers and vehicles. No construction can change the reality that the sum total of these operations is the abstract idea of vehicle dispatch. For this reason alone, it is unnecessary to perform claim construction before adjudicating Juno's motion.

| Claim Language |
|---|
| (a) a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage; and |
| (b) a plurality of communication devices for providing wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage; |
| (c) a wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system; |
| (d) a wireless means of informing the passenger of the assignment and updated expected arrival time; |
| (e) a wireless means of detecting the proximity of the passenger and alerting the passenger of the proximity of the vehicle.[1] |

Further, it is a plaintiff's responsibility to offer any construction that could alter the § 101 analysis. For instance, in *Cleveland Clinic Foundation v. True Health Diagnostics LLC*, the Federal Circuit held that "it was appropriate for the district court to determine that the . . . patents were ineligible under § 101 at the motion to dismiss stage" because "[plaintiff] provided no proposed construction of any terms . . . that would change the § 101 analysis." 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014) (affirming dismissal where

---

[1] Elements (a) and (b) are common to all asserted claims. Element (c) is present only in claims 2 and 3, element (d) is present only in claim 3, and element (e) is present only in claim 6. (Dkt. No. 35-1 at 23:39-24:37, 24:54-65.)

plaintiff "d[id] not explain which terms require construction or how the [§ 101] analysis would change"); *Esoterix Genetic Labs. LLC v. Qiagen Inc.*, 133 F. Supp. 3d 349, 354 (D. Mass. 2015) (plaintiff raised no "construction issues that would preclude the Court from deciding whether the [patent] covers eligible subject matter").

Nor can the early stage of the case excuse RideApp's failure. RideApp has briefed claim construction issues relating to the asserted claims in two pending U.S. Patent Office proceedings. IPR2019-00414, Dkt. No. 11; IPR2019-00671, Dkt. No. 10. And RideApp privately served its proposed claim constructions in the Northern District of California litigation shortly after filing its Opposition. *See RideApp, Inc. v. Lyft, Inc.*, No. 3:18-cv-07152-JST (N.D. Cal.), Dkt. No. 73; N.D. Cal. Patent Local R. 3-1, 3-3, 4-1(a), 4-2(a). If there were claim construction issues pertinent to § 101, RideApp could have easily cited them here. Its failure to do so is telling.

B.  *Alice* Step 1

1.  **RideApp Mischaracterizes Juno's Position**

*Alice* Step 1 asks "whether the claims at issue are *directed to*" an abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).[2] Juno's Opening Brief methodically analyzed the claim language and reasoned that the claim elements—which recite assigning passengers to vehicles, keeping track of vehicles and passengers, communicating the necessary information to passengers and vehicles (such as vehicle assignment, estimated arrival times, and vehicle proximity), and distributing invoices accordingly—amount collectively to the abstract idea of vehicle dispatch. (Dkt. No. 40 at 10-12.)[3] Rather than substantively address this

---

[2] All emphases herein are added, unless otherwise stated.

[3] RideApp repeatedly implies that Juno has improperly "dissect[ed] the claims" and declared the individual elements abstract in isolation rather than evaluate them as a whole. (Dkt. No. 52 at 14.) In fact, Juno considered the claims as a whole, and found that "the sum total of the[] elements" was abstract. (*E.g.*, Dkt. No. 40 at 10-12.)

3

analysis, RideApp mischaracterizes Juno's position as asserting, among other things, that:

- "[A]ny invention that uses any computer technology is abstract unless it improves the computer itself . . . any invention that uses known elements cannot be inventive." (Dkt. No. 52 at 11-12.)

- The patentee "[must] have invented the cell phone, fiber optic cables, or vehicles, to integrate them into his invention." (*Id*. at 14.)

Contrary to this portrayal, Juno does not contend that recitation of generic computer technology *renders* the claims abstract. Rather, the idea of vehicle dispatch is abstract to begin with; claims that merely implement it using generic technology *remain abstract*. *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 182 (S.D.N.Y. 2018) (An abstract idea "does not become non-abstract by limit[ation] . . . to a particular . . . technological environment.").

### 2. RideApp Fails To Identify Non-Abstract Structure in the Claims

RideApp's inability to identify any structural limitations in the claims beyond the concept of vehicle dispatch confirms that the claims are abstract. RideApp repeatedly insists that the claims are directed to *something* beyond vehicle dispatch, but fails to express what that *something* is. For instance, RideApp states without explanation that the "Patent distinctly claims a 'wireless means' of 'on-demand allocation' and 'tracking,'" because of "corresponding structure . . . extensively exemplified in the specification." (Dkt. No. 52 at 11; *see id*. at 20.) But gesturing to the specification at large does not render the claims non-abstract. Moreover, RideApp describes the purportedly non-abstract "allocation" function as simply "us[ing] specific passenger parameters, passenger information, transit parameters, and vehicle data to allocate vehicles to passengers." (*Id*. at 14-15.) Assigning rides based on passenger and vehicle information is what any generic vehicle dispatch system would necessarily do. Similarly, RideApp describes the supposedly non-abstract "tracking" function as "dynamically tracking passenger and vehicle location and using their locations in an inventive way." (*Id*. at 15.) But

RideApp does not say what this so-called "dynamic" tracking is, let alone explain how it is less abstract than normal tracking or detail the "inventive way" location data is subsequently used.[4]

RideApp further contends that despite Fig. 4 of the '730 patent—which Juno noted depicts a structure equivalent to human-operated vehicle dispatch—there is non-abstract subject matter in the "more detailed and complex drawings," namely, Figs. 5, 6, and 9 (partially reproduced below). (Dkt. No. 52 at 19.) But Figs. 5 and 6 are mere flow charts outlining the broad contours of the reservation process with vague labels such as "Add Reservation to Vehicle Loading" and "Notify Vehicle of Trip Selection." (Dkt. No. 35-1, Fig. 5.) They resemble simple instructions for a human dispatcher, not a particular algorithm. Similarly, Fig. 9 is not a structural diagram but a list of basic functions, such as "Find Best Car." (Dkt. No. 35-1, Fig. 9.) It does not explain, for instance, *how* one might find the best car. Even if these disclosures were incorporated into the asserted claims, at most they amount to "invocation of a wish list of functions, incorporating computer terminology, [and do] not create an invention." *WalkMe Ltd. v. Pendo.io, Inc.*, No. 18 cv 7654 (DLC), 2019 WL 1512602, at *7 (S.D.N.Y. Apr. 4, 2019).



FIG. 5

FIG. 9

---

[4] RideApp elsewhere contends that the asserted claims are non-abstract because they are "not *only* software," but rather "integrate[] software with wireless devices, location technology, a central assigning system, and a database, *all of which are concrete*." (Dkt. No. 52 at 18.) But "[t]he fact that a computer 'necessarily exist[s] in the physical, rather than the purely conceptual, realm,' . . . is beside the point." *Alic*e, 573 U.S. at 224.

And RideApp contends that various security features—such as "short term [audio/video] . . . 'black-box'" functionality and "identify[ing] . . . criminal activity of passengers" (Dkt. No. 52 at 15-16)—save the asserted claims from abstraction.  But these features are not even hinted at in the claim language, let alone recited.

In short, RideApp is correct only in that, under *McRO, Inc. v. Bandai Namco Games America Inc.* and its ilk, a "*specific means or method* that improves the relevant technology" is patent-eligible.  837 F.3d 1299, 1314 (Fed. Cir. 2016).  But, the asserted claims lack any semblance of the required specificity, and "repetition of words like 'particular' and 'specific' in bold italics when referring to the claims . . . does not make them so."  *Kickstarter, Inc. v. Fan Funded, LLC*, 2015 WL 3947178, at *12 (S.D.N.Y. June 29, 2015).

### 3. Humans Can Perform the Claimed Abstract Idea of Vehicle Dispatch

Juno's position is bolstered by the fact that claims reciting "a series of steps that could be performed by humans are generally considered abstract ideas." *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 388 (S.D.N.Y. 2018), *appeal docketed*, No. 19-1235 (Fed. Cir. Nov. 27, 2018).  RideApp contends that this principle does not apply because "*what is claimed* is an 'automated system'—not people performing allocation." (Dkt. No. 52 at 19.)  This is incorrect as a matter of law.  The "claims in *Alice* also required a computer . . . but nonetheless were found to be abstract" because the underlying steps could be performed by humans.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

RideApp further argues that "[t]he mere fact of human intermediaries defeats the invention's focus on efficient allocation, tracking, and security." (Dkt. No. 52 at 19-20.)  But "the fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claim[s]."  *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).  Moreover, RideApp does

not cite a single example of a task a human *could not* perform, only tasks that would be *burdensome* for a human, such as "continuously updat[ing] the dispatcher of the vehicle's location" and "calling a separate dispatcher to update the passenger's location." (Dkt. No. 52 at 19.) In the first instance, these limitations are not recited in the claims. But even if these elements were relevant, a claim is abstract where "a room full of telephone operators . . . could accomplish the same result—*expensively, true, but the same result, using the same process*." *Stanacard v. Rubard, LLC*, 2015 WL 7351995, at *7 (S.D.N.Y. Nov. 18, 2015).

**C.**     *Alice* **Step 2**

   **1.     RideApp Inappropriately Considers Whether the Abstract Idea, Rather Than the Additional Elements, Supplies an Inventive Concept**

The second step of *Alice* seeks to ascertain whether the claims recite an "inventive concept" by asking, *apart from the abstract idea*, "[w]hat else is there in the claims before us?" *Alice*, 573 U.S. at 217 (citation omitted). RideApp concedes that the "Court must look to the remaining elements aside from those directed to an abstract idea." (Dkt. No. 52 at 8.) Here, only the technological claim limitations beyond the abstract concept of vehicle dispatch—namely the claimed computers and communications devices—are appropriately considered at Step 2.

Disregarding this principle, RideApp goes on to contend that *the abstract idea of vehicle dispatch*—sometimes, equally inappropriately, in combination with technological elements— supplies an inventive concept. For instance, RideApp asserts that:

- "[N]o transit system at the time of the invention included the Patent's inventive 'tracking,' 'allocation,' [and] three-way communications . . . ." (*Id*. at 22.)
- "Never before had a transit system offered dynamic scheduling and tracking (and notification) of proximity and ETA." (*Id*. at 22.)

But "a claimed invention's use of the [abstract idea] to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that [abstract idea]." *BSG*

7

*Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).[5]  Accordingly, the bulk of RideApp's Step 2 argument is inapposite.

### 2. The Technological Elements Beyond the Abstract Idea Are Conventional

RideApp's few arguments directed to the technological claim elements beyond the abstract idea fare no better.  RideApp first argues that "the individual elements of the invention were not well-understood, routine, or conventional."  (Dkt. No. 52 at 22.)  But RideApp then admits that, in reality, "the claim limitations recite[] an . . . arrangement of *known, conventional pieces*."  (*Id*. at 24.)  Indeed, aside from the abstract concept, the only allegedly unconventional component RideApp identifies is "GPS integrated with a cell phone."  (*Id*. at 24.)  But not one of the asserted claims actually recites GPS or a cell phone.  And even if the claims had recited GPS, RideApp admits there already existed a "commercially available cell phone . . . endowed with GPS" and "[t]echnologists [already] looked to GPS" to design transit systems.  (*Id*. at 2.)

RideApp devotes only two sentences to the argument that "the ordered combination of claim limitations recites an invention that is not merely 'the routine or conventional use of [technology].'"  (Dkt. No. 52 at 24.)  But in place of analysis or even discussion of this point, RideApp goes on to simply parrot *every limitation* in the asserted claims without explanation:

> The '730 Patent claims include 'a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices,' 'a plurality of communication devices for providing wireless communication between passengers, vehicles, and the central data system,' and a wireless means . . . .

(*Id*. at 24.)  These bare claims cannot speak for themselves; they offer no sense of what *ordered combination* of technological elements RideApp sees, let alone how it is unconventional.

---

[5] If it were appropriate to evaluate the originality of *both* the abstract idea and the additional claim elements at Step 2, *Alice* would collapse into the distinct novelty inquiry under 35 U.S.C. § 102, which asks whether the overall claim is new.  RideApp recognizes that "eligibility (§ 101) is a separate inquiry from novelty (§ 102)."  (Dkt. No. 52 at 7.)  Nevertheless, RideApp repeatedly conflates the two, arguing, for instance, that *the abstract idea* or an element thereof had "never [been] done before."  (*Id*. at 18.)  All such statements are inapposite.

Indeed, the specification only describes a conventional combination of technological components. The "communication devices . . . provid[e] wireless communication" (Dkt. No. 35-1 at 24:16-17, 24:28-29, 24:59-60) and the "central data system," i.e., computer, "track[s] [data] and distribut[es] periodic invoices." (Dkt. No. 35-1 at 23:65-67, 24:25-27, 24:56-58.) This configuration "do[es] nothing more than spell out what it means to 'apply it on a computer' [and] cannot confer patent-eligibility." *Intellectual Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (quoting *Alice*, 573 U.S. at 224).

### 3. RideApp's Pleadings Cannot Generate a Factual Dispute

RideApp implies that, under *Berkheimer* and *Aatrix*, its naked assertion that digital ridesharing is unconventional creates a factual dispute that precludes resolution of Step 2. But these cases state only that Step 2 "*may* contain underlying issues of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Three restrictions greatly narrow the *Berkheimer* exception. First, because the abstract idea "cannot supply the inventive concept," *BSG*, 899 F.3d at 1290, assertions that it was unconventional to implement functions of vehicle dispatch have no bearing. Only the additional technological claim elements are considered. Second, there can be no dispute if the claims do not actually "recite any of the purportedly unconventional activities," *Berkheimer*, 881 F.3d at 1369. Third, allegations cannot establish a factual dispute where "the specification admits the additional claim elements are well-understood." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018) (Moore, J., concurring).

RideApp's supposed factual dispute runs afoul of these restrictions. RideApp contends that its Amended Complaint "points to specific evidence (and made numerous allegations) that the Patent claims were unconventional." (Dkt. No. 52 at 24-25; *see id*. at 11.) Rather than explain what these assertions are or how they generate a dispute, RideApp cites to paragraphs 27, 31, and 34 of the Amended Complaint without further discussion. But the cited paragraphs merely pair

9

summaries of the claims with blanket assertions that the claims are novel, such as the following:

> Unlike any transit system before it, this system monitors both the passenger and vehicle information and provide[s] communications with each to allow for more precise times of pickup; dynamically updates schedules, routes, and loading . . . .

(Dkt. No. 35 at ¶ 27 (emphasis omitted).) Such assertions about the novelty of vehicle dispatch have no place in the Step 2 analysis. And, as detailed in Juno's Opening Brief (Dkt. No. 40 at 24-25), even if RideApp had made factual allegations regarding the additional technological elements, those could not overcome the '730 patent's admissions to the contrary. In short, "*Aatrix* and *Berkheimer* do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention . . . is novel." *British Telecommunications plc v. IAC/InterActiveCorp*, 2019 WL 438335, at *20 (D. Del. Feb. 4, 2019).

### D. The Risk of Broad Preemption Confirms Patent Ineligibility

Although not dispositive, "preemption may signal patent ineligible subject matter." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1150 (Fed. Cir. 2016). Despite its protests that "preemption is not an issue" (Dkt. No. 52 at 17), RideApp's Opposition openly signals that the '730 patent presents a risk of broad preemption, explaining that "RideApp seeks . . . to exclude others from using . . . the combination of communication devices, locating technology . . . and allocation . . ." (*Id*. at 17). This generic description makes clear that RideApp seeks to preempt *all digital ridesharing platforms*. Indeed, RideApp goes on to say that, if Juno wishes to continue operating, it "is welcome to engage in 'traditional' vehicle dispatch." (*Id*. at 18.) RideApp even asserts that Juno's "entire business model embodies [the asserted claims]." (*Id*. at 1.) But as this Court has made clear, a "'business model' implemented with [conventional technology]" poses a broad risk of preemption and should be held ineligible. *Kickstarter*, 2015 WL 3947178, at *12. At a minimum, RideApp's contention that all possible digital ridesharing platforms would infringe puts to rest any notion that the '730 patent claims a *particular* system.

10

Dated: July 1, 2019
New York, New York

Respectfully submitted,

 /s/ P. Anthony Sammi
P. Anthony Sammi
E-Mail: anthony.sammi@skadden.com
Douglas R. Nemec
E-Mail: douglas.nemec@skadden.com
Andrew D. Gish
E-Mail: andrew.gish@skadden.com
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Defendant Juno USA, LP*

11